Argued and submitted September 12, 2001, decision of Court of Appeals; order of
Employment Relations Board reversed and case remanded to Employment
Relations Board for further proceedings May 16, 2002

## LANE UNIFIED BARGAINING COUNCIL/SLEA/OEA/NEA,
*Petitioner on Review,*

*v.*

## SOUTH LANE SCHOOL DISTRICT 45J3,
*Respondent on Review.*

## (UP-36-98; CA A106346; SC S48075)

47 P3d 4

John Bishop, of Bennett, Hartman & Reynolds, Portland, argued the cause for petitioner on review. With him on the briefs was Mark Johnson.

Nancy Hungerford, of The Hungerford Law Firm, West Linn, argued the cause and filed the brief for respondent on review. With her on the brief was Brian Hungerford.

LEESON, J.

**LEESON, J.**

Petitioner Lane Unified Bargaining Council/SLEA/ OEA/NEA (Association) sought judicial review of an order of the Employment Relations Board (ERB). ERB dismissed the Association's claims that respondent South Lane School District (District) committed an unfair labor practice in violation of ORS 243.672(1)(g) and (h)[1] by refusing to arbitrate a grievance that the Association had filed on behalf of Marc Rogge, a teacher and member of its bargaining unit, and by failing to reduce an alleged settlement of that grievance to a written and signed contract. The Court of Appeals affirmed, based in part on that court's interpretation of the grievance moratorium provision in ORS 342.895(5).[2] *Lane Unified Bargaining v. South Lane Sch. Dist.*, 169 Or App 280, 293-95, 9 P3d 130 (2000). The only issue before this court is whether the moratorium provision in ORS 342.895(5) permits the District to refuse to arbitrate Rogge's grievance of the District's decision not to extend his contract. For the reasons that follow, we conclude that it does not.

---

[1] ORS 243.672(1) provides, in part:

"It is an unfair labor practice for a public employer or its designated representative to do any of the following:

"* * * * *

"(g) Violate the provisions of any written contract with respect to employment relations including an agreement to arbitrate or to accept the terms of an arbitration award, where previously the parties have agreed to accept such awards as final and binding upon them.

"(h) Refuse to reduce an agreement, reached as a result of collective bargaining, to writing and sign such contract."

The Association does not challenge the Court of Appeals' holding that the District had not violated subsection (1)(h), and we do not address that issue.

[2] ORS 342.895(5) provides, in part:

"Notwithstanding ORS 243.650 to 243.782 or the provisions of any collective bargaining agreement entered into after August 15, 1997, no grievance or other claim of violation of applicable evaluation procedures, or fundamental unfairness in a program of assistance for improvement, shall be filed while a teacher is on a program of assistance. All statutes of limitation and grievance timelines shall be tolled while the subject claims are held in abeyance under this moratorium provision. Except as provided in this subsection, the moratorium and tolling period ends on the date the program of assistance for improvement is completed, not to exceed one year, after which any claims subject to this provision may be pursued as otherwise provided by law or contract. * * *"

By its terms, that statute applies to "any collective bargaining agreement entered into after August 15, 1997." The collective bargaining agreement at issue in this case was executed on March 3, 1998.

We summarize the following undisputed facts from the Court of Appeals' decision and ERB's findings. In March 1998, the South Lane School Board followed the District's recommendation not to extend Rogge's contract for an additional two years. On March 9, the District's personnel director informed Rogge of the decision and told him that he would "be placed on a program of assistance for improvement as soon as the plan may be finalized."

The parties' collective bargaining agreement (CBA) provides a four-step grievance procedure for grieving actions such as a decision not to extend a teacher's contract. The purpose of the procedure is to "resolve grievances at the lowest possible level." A "Level One" grievance consists of an informal discussion between the teacher and the school principal or the teacher's supervisor. If they cannot resolve the dispute, then the teacher may file a "Level Two" written grievance with the principal or supervisor, specifying "the cause of the grievance." If the teacher is not satisfied with the disposition at that level, then the teacher may file a "Level Three" appeal to the district superintendent. If the teacher is not satisfied with the superintendent's disposition, then the teacher may ask the Association to submit the grievance to arbitration, which is known as a "Level Four" grievance.

After Rogge received notice that the District would not extend his contract, an Association representative met with Rogge's principal on March 17, 1998, to initiate a Level One grievance. In April 1998, the Association filed a Level Two grievance on Rogge's behalf, alleging that the District had violated four provisions of the CBA in its decision not to extend Rogge's teaching contract. The District did not respond, and, on April 16, 1998, the Association initiated a Level Three grievance by appealing to the district superintendent. The next day, the District gave Rogge a final written plan of assistance for improvement.

After the parties' attempt to negotiate a settlement of the Level Three grievance failed, the Association filed a Level Four grievance calling for arbitration. The District refused arbitration, relying on "the statutory moratorium provisions in ORS 342.895(5)." The Association then filed an unfair labor practice complaint, alleging that the District had

violated ORS 243.672(1)(g) and (h) by refusing to arbitrate Rogge's grievance over the decision not to extend his contract and by failing to reduce a grievance settlement agreement to writing.

An administrative law judge held a hearing and issued recommended findings of fact to ERB. ERB then made its own findings of fact and concluded that the District had not violated either ORS 243.672(1)(g) or (h). With respect to the claim involving subsection (g), the only claim before this court, ERB concluded that Rogge was on a program of assistance for improvement when he filed his grievance on March 17, 1998, and declared that the grievance moratorium in ORS 342.895(5) applied to the grievance. Accordingly, ERB held, the District had not committed an unfair labor practice by refusing to arbitrate Rogge's grievance. The Association petitioned for judicial review.

The Court of Appeals held that Rogge was not on a program of assistance for improvement when he filed his grievance. *Lane Unified Bargaining*, 169 Or App at 292. However, relying on *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (in construing statute, court responsible for identifying correct interpretation, whether or not asserted by parties), the Court of Appeals concluded that the statutory moratorium in ORS 342.895(5) suspended the grievance that Rogge had filed because that moratorium "does not merely prohibit the *filing* of subject grievances but also abates the *pursuit* of grievances that were pending when [Rogge] was placed on a program of assistance." *Id.* at 293 (emphasis added). The Court of Appeals also held that Rogge's grievance regarding the decision not to extend his contract "fell within the class of grievances or other claims" subject to the moratorium in ORS 342.895(5), *id.* at 295-96, and that the parties' CBA did not waive the statutory moratorium provision, *id.* at 298. Accordingly, the Court of Appeals affirmed ERB's decision that the District had not committed an unfair labor practice under ORS 243.672(1)(g). *Id.*

As noted, the only issue before this court is whether the Court of Appeals correctly construed the moratorium provision in ORS 342.895(5) as permitting the District to refuse to arbitrate Rogge's grievance of the District's decision not to

extend his contract. The Court of Appeals held, and it is uncontested here, that Rogge's grievance was pending when the District placed Rogge on a program of assistance for improvement. The Association argues that, by its terms, ORS 342.895(5) prohibits a teacher only from *filing* specified grievances while the teacher is on a program of assistance for improvement. The statute does not place a moratorium on grievances that were filed before the teacher was placed on such a program.

The District responds that, although the first sentence of ORS 342.895(5), read in isolation, states that the moratorium applies to only the filing of specified grievances or claims, the second and third sentences of that subsection, and the legislative history of the statute, establish that the moratorium also applies to pending grievances.[3]

Resolution of the parties' dispute requires us to construe the first three sentences of ORS 342.895(5), which we repeat here for convenience:

"Notwithstanding ORS 243.650 to 243.782 or the provisions of any collective bargaining agreement entered into after August 15, 1997, *no grievance or other claim of violation of applicable evaluation procedures, or fundamental unfairness in a program of assistance for improvement, shall be filed while a teacher is on a program of assistance. All statutes of limitation and grievance timelines shall be tolled while the subject claims are held in abeyance* under this moratorium provision. Except as provided in this subsection, the moratorium and tolling period ends on the date the program of assistance for improvement is completed, not to exceed one year, after which *any claims subject to this provision may be pursued* as otherwise provided by law or contract. * * *"

(Emphasis added.) We begin by examining the text and context of the statute, the text itself being the best evidence of

---

[3] The District also argues that, under *Springfield Educational Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), this court "must give deference to the decision of the ERB in this case dismissing the unfair labor practice complaint" because ERB is an agency "familiar with the intricacies of the statute, as well as the legislative history leading to its passage" and has "particular expertise in applying facts to the statute at issue." We have considered that argument and conclude that the District's reliance on *Springfield* is misplaced.

the legislature's intent. *See PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-11, 859 P2d 1143 (1993) (describing methodology).

The first sentence of ORS 342.895(5) provides that "no grievance or other claim of violation of applicable evaluation procedures, or fundamental unfairness in a program of assistance for improvement, shall be *filed* while a teacher is on a program of assistance." (Emphasis added.) The ordinary meaning of the word "file" in this context is "to perform the first act of (as a lawsuit): COMMENCE." *Webster's Third New Int'l Dictionary,* 849 (unabridged ed 1993). The first sentence of ORS 342.895(5) thus unambiguously prohibits a teacher from commencing specified grievances or claims while the teacher is on a program of assistance for improvement. That sentence does not mention, much less place a moratorium on, grievances or claims that the teacher might have filed before the District placed the teacher on such a program. We turn to whether the next two sentences of subsection (5) nonetheless signal the legislature's intent to make the grievance moratorium described in the first sentence apply to grievances that are pending when a teacher is placed on a program of assistance for improvement.

The Court of Appeals held that the second and third sentences of subsection (5) make clear that the grievance moratorium also applies to pending grievances. *Lane Unified Bargaining,* 169 Or App at 293. The Court of Appeals reasoned that the plural phrase "grievance timelines" in the second sentence must refer to pending grievances because "[t]here would have been little purpose in referring to any timeline other than one governing the initiation of grievances, unless the legislature also intended to suspend the pursuit of previously initiated grievances as well." *Id.* Moreover, the Court of Appeals reasoned, the phrase "held in abeyance" in the second sentence of subsection (5) "implicitly refer[s] to pending claims," because that phrase connotes "the cessation of an *already existing* activity" and would be mere surplusage if the moratorium proscribed only the initiation of grievances. *Id.* at 294. Finally, the Court of Appeals reasoned, use of the word "pursued" in the third sentence of subsection (5), in contradistinction to the word "filed" in the first

sentence, indicates that the legislature intended to place a moratorium on any pending grievance. *Id.* at 294-95.

We disagree with that analysis of the statute. The first sentence of subsection (5) unambiguously states that no applicable grievance or claim shall be *filed*, that is, commenced, while a teacher is on a program of assistance for improvement. The second sentence provides that "[a]ll statutes of limitation and grievance timelines shall be tolled while *the subject claims* are held in abeyance under this moratorium provision." (Emphasis added.) The article "the" in the phrase "the subject claims" indicates that that phrase refers to the grievances or claims specified in the first sentence, namely, those that a teacher has not yet filed when the teacher is placed on a program of assistance. Moreover, the plural word "timelines" is consistent with the possibility that the moratorium may affect multiple filing deadlines on multiple claims. Contrary to the Court of Appeals' reasoning, the word "timelines" in the second sentence does not suggest that the legislature intended to broaden the moratorium on filing claims or grievances that the first sentence of subsection (5) describes.

■ Neither does the phrase "held in abeyance" in the second sentence of subsection (5) indicate that the legislature intended that the moratorium described in the first sentence apply to pending claims or grievances. The phrase, "hold in abeyance" in this context means to hold in "temporary inactivity or suppression: cessation or suspension." *Webster's Third New Int'l Dictionary* at 3. It is not illogical to speak of holding a claim or grievance in "temporary inactivity" merely because the teacher has not commenced the grievance or claim. Read in context, the phrase "held in abeyance" in the second sentence of subsection (5) describes the effect that the moratorium has on the grievances or claims identified in the first sentence, namely, specified grievances or claims that the teacher has not yet filed when the teacher is placed on a program of assistance for improvement. That phrase does not suggest that the legislature intended the moratorium described in the first sentence to apply to pending claims or grievances.

We turn to the third sentence of ORS 342.895(5), which describes when "any claims subject to this provision may be pursued." As noted, the Court of Appeals held that the word "pursued" in that sentence is an additional indication that subsection (5) places a moratorium on pending grievances. We disagree. The word "pursue" can be a synonym for "initiate" or "file." *Id.* at 1848 (defining "pursue" to mean "to follow or *seek by judicial proceedings*: prosecute ‹pursued his legal remedies›" (emphasis added)). Moreover, the phrase "any claims subject to this provision" clearly confines the term "pursue" to the grievances and claims subject to the moratorium described in the first sentence, that is, those that the teacher has not yet filed when the teacher is placed on a program of assistance for improvement. That the word "pursue" also can mean "to proceed with: CONTINUE," *id.*, is not a persuasive reason to conclude that the legislature intended the grievance moratorium described unambiguously in the first sentence of subsection (5) to apply to pending grievances.

In sum, we hold that ORS 342.895(5) places a moratorium on the filing of specified grievances or claims while a teacher is on a program of assistance for improvement. The statute does not place a moratorium on grievances that are pending when the teacher is placed on such a program. Nothing in the context of ORS 342.895(5) calls that conclusion into question. It follows that the moratorium in ORS 342.895(5) does not permit the District to refuse to arbitrate Rogge's grievance and that ERB erred in dismissing the Association's unfair labor practice claim under ORS 243.672(1)(g).

The decision of the Court of Appeals is reversed. The order of the Employment Relations Board is reversed, and the case is remanded to the Employment Relations Board for further proceedings.